# OHIO NISI PRIUS REPORTS

## NEW SERIES—VOLUME XI.

CAUSES ARGUED AND DETERMINED IN THE SUPERIOR,
COMMON PLEAS, PROBATE AND INSOLVENCY
COURTS OF OHIO.

### PEDESTRIAN STRUCK BY AUTOMOBILE AT STREET CROSSING.

Common Pleas Court of Hamilton County.

DANIEL GOLDSTEIN v. SAMUEL KLEIN.

Decided, February 1, 1911.

*Negligence—Woman Alighting from a Street Car Struck by an Auto-
mobile as She Passed Around the Rear End—Law of the Road as
Prescribed by Statute—Cincinnati Ordinance Invalid Because Un-
reasonable—Application of the Rule of Ordinary Care—Questions
of Negligence and Contributory Negligence Where the Automobile
Was Out of Its Proper Course and the Injured Woman Failed to
Look in the Direction From Which it Was Approaching—Charge of
Court—Burden of Proof.*

1. In the absence of any legislative provision in the law of the road,
   applicable to vehicles passing each other where both are going or
   headed in the same direction, the common law rule of ordinary
   care obtains, bearing in mind the general rule of keeping to the
   right and the usages and conditions of the time and place.
2. The Cincinnati ordinance, regulating the use of automobiles and
   motor vehicles on the streets, alleys and park driveways of the city,

is probably invalid because unreasonable, in so far as an arbitrary and unqualified rule of going to the left is prescribed for vehicles going or headed in the same direction; but assuming the contary, it is still true that neither this ordinance nor Section 6310, General Code, give to a vehicle the right to pass to the left of a street car which has come to a standstill to discharge passengers on a wide, well improved and much traveled street upon which there is a double track street railway, in the center of such street.

3. When an automobile attempts to pass a standing car by turning to the left, it should be so managed as not to imperil one who is leaving the car and whose whole attention in the exercise of ordinary care may be occupied with the ordinary dangers in the form of cars and vehicles rightfully approaching from the opposite direction.

4. Failure of a woman, alighting from a str et car and passing around the rear end, to look for an automobile approaching from an unexpected direction does not as a matter of law leave an unrebutted presumption of negligence on her part; and, acting under instructions requiring ordinary care on the part of both, the determination of the jury as to where the negligence lay was one peculiarly within their province, and the evidence does not require that the finding be disturbed.

5. Negligence or contributory negligence on the part of a plaintiff are two entirely different matters, when considered as a defect in plaintiff's case, or as an affirmative defense; and where the court in its general charge instructs the jury as to what would constitute negli gence on the part of the plaintiff, failure to charge as to such negligence from the standpoint of contributory negligence is not error when the issue of contributory negligence as a defense is not raised or not clearly raised by the pleadings, and counsel for the defendant although asked by the court in regard thereto expressly declined to request that such a charge be given.

*Bentley & Headley*, for plaintiff.
*Worthington & Strong* and *Frank Seinsheimer*, contra.

HUNT, J.

On November 19, 1909, at 5:30 P. M., after dark, the defendant with his son and son-in-law in one of the largest and most powerful limousines used in this vicinity, owned by defendant and operated by his chauffeur, was driving on Reading road, returning from business to his home. Reading road is one of the main arteries of travel in this city and is an improved

street of unusual width.   There is a double street railway track in the center of the street, over which at that time of the day crowded cars are run within a short distance of each other and from which passengers returning home alight at almost every intersecting street.   Hale avenue or street is one of these streets. It extends from Reading road westwardly but not eastwardly. Reading road both north and south of Hale avenue, except for a short distance at Hale street, ascends with a slight grade.   On that night two or more crowded cars going northwardly some fifteen or twenty feet apart, had stopped at or near Hale avenue. From such cars several persons got off for Hale avenue, among them plaintiff's wife.   She alighted from the first car, passed around to the rear of that car and in front of the next following one, looked northwardly for any cars or vehicles approaching southwardly, as did other persons on the rear of the car apprehensive for her safety, and then started to cross the southbound tracks when she was struck by defendant's automobile coming northwardly on the south-bound track and to the left of the cars which were at a standstill.   She did not look southwardly until she was in the path of the auto, when it was too late to avoid being struck.

It is claimed that the travel on Reading road southwardly was such as to require her entire attention in avoiding cars and vehicles approaching from the north to the exclusion of any attention, by observation at least, in the direction from which the approach of vehicles and cars was not to be ordinarily expected. The defendant in coming from the down town district drove on the right hand side of Reading road, but as he approached the cars which were stopped at or near Hale avenue he claims that the street to the right of the street cars was or seemed to be obstructed by a number of persons upon such part of the street. To avoid this obstruction he turned to the left of the street cars and proceeded northwardly in, or almost entirely in, the southbound track and very near the standing cars.   He claims that he was running slowly, that his acetylene light was burning, that his horn was sounded and that an outlook was maintained for persons crossing from between the cars for Hale avenue.

The evidence, however, as to speed and the sounding of the horn is conflicting. As he passed the car immediately behind the car from which plaintiff's wife had alighted he saw plaintiff's wife come out from behind such car and step in the path of the auto. The chauffeur attempted to turn the auto, but plaintiff's wife was struck and very seriously injured.

This is an action by the husband for damages by reason of his wife's injuries. The verdict was for the plaintiff in the sum of $4,000, which the defendant now moves to set aside. The amount of the verdict is not in question, if plaintiff is entitled to a verdict. The defendant at the close of plaintiff's evidence and at the close of all the evidence asked for an instructed verdict.

As the rules applicable, if the wife was herself the plaintiff, as she is in another case brought by her, are applicable to this case, for convenience the wife be referred to as the plaintiff.

The Legislature in prescribing Section 5310, General Code, the law of the road for vehicles and horsemen, did not specifically provide for cases where vehicles pass each other both going or headed in the same direction, and it may be therefore conceded for the purpose of this case that there is no legislative provision therefor. If this is so, the reason therefor was probably that the proper method of so passing depended so much upon other and varying circumstances that no arbitrary rule could be provided for such cases and that the best rule was the common law rule of ordinary care, taking into consideration the general rule of keeping to the right and the usages and conditions of the time and place.

There may be considerable doubt whether the ordinance No. 1074 of the city of Cincinnati, which attempts to provide an arbitrary and unqualified rule where automobiles or motor vehicles pass each other both going or headed in the same direction, be not unreasonable and therefore invalid, but even if such ordinance be valid it does not necessarily follow that Section 6310, General Code, or that such ordinance applies to street cars. In some laws and ordinances the word vehicle or motor vehicle may include street cars, depending on the context and declared or manifest purpose of the law or ordinance; but with

regard to passing each other or passing other vehicles, if such law or ordinance is applicable to vehicles passing or overtaking street cars, it would by its terms be applicable to street cars passing or overtaking vehicles. Manifestly the term vehicles in such law, and motor vehicles in such ordinance, applies respectively to vehicles and motor vehicles not having a fixed right-of-way. The method to be followed, of vehicles passing street cars, must depend upon other rules, of which in the absence of a statutory rule the rule of ordinary care is the controlling, if not the only one. Such rule does not result in any arbitrary method. The method depends on the circumstances of the case. The location of the tracks, whether in the center or on the side of the road, and the width and condition of the road, are important circumstances controlling the method to be used. Street cars do not always run on the right side of the road; for example, in coming down the side of a hill in several places in our own city, in order to have a car on the down track removed as far as possible from any danger of running over the side of a hill, the ordinary method of the use of the tracks is sometimes reversed.

Moreover, the ordinance referred to, although offered by the plaintiff and admitted in evidence, is entitled "An ordinance to regulate the use of automobiles and motor vehicles on the streets, alleys and park driveways of the city."

Section 1 of the ordinance expressly exempts street cars from its operation. Sections 2 and 3, applying to the license and license tag provided for in Section 1, are manifestly inapplicable to street cars. Section 4, regulating speed, Section 5, regulating stopping upon signal, Section 7, regulating headlights, and Section 8, regulating the obstruction of the fire department. in which sections the term motor vehicle is as comprehensive as in Section 6, which is claimed to be applicable to this case, have never been considered as applicable to street cars, as to which there are other ordinances applicable specifically thereto.

Therefore, neither Section 6310, General Code or the ordinances referred to gave the defendant any right to pass to the left of a car which was at a standstill in one of the double tracks located in the center of Reading road, a wide and improved street.

On the contrary, if the defendant had followed the generally accepted rule of keeping to the right side of a wide improved street he would have passed to the right of the car and not to the left. It is not necessary to say, nor could it be said, that he had no right whatever to pass to the left of the car, but in going north in a south-bound track, under the circumstances of this case, he was not doing the ordinary thing, and in doing what was not ordinarily to be expected or anticipated by other users of the street he was bound to so act and so run his machine as not to unnecessarily imperil the plaintiff by any extraordinary danger caused by his act when plaintiff was avoiding ordinary dangers, which, for all the court can say as a conclusion of law, may have been sufficient to have taken her entire attention as an ordinarily prudent person. It may be said that in passing behind a car, it is negligence as a rule of law not to look for a car coming on the other track in an opposite direction, although in the case of *Cincinnati Traction Company* v. *Johnson* (*Court Index*, January 19, 1911) the circuit court say, "it is not negligence as a matter of law"; but if so it is only so because an ordinarily prudent person either knows or should expect the tracks to be so used. The very reason for such rule is a reason for a person exercising ordinary care, not anticipating or providing for the use of one of the double tracks in the center of a wide and improved street, contrary to the way in which ordinarily and in fact in this case, they were used by the street car.

The case of *Drown* v. *Traction Company*, 76 O. S., 234, although much misconstrued and misapplied, is clearly not applicable to the present case, because in such case the overtaking car was approaching the vehicle with which it collided from a direction from which the coming of cars was to be expected.

It follows therefore, that plaintiff's conduct as disclosed by her evidence did not as a matter of law leave any unrebutted presumption of negligence, and that the question of her negligence was one properly left to the jury, and that their finding thereon was sustained by evidence sufficient to preclude the court from disturbing such finding. The court in its charge

erroneously gave the defendant the benefit of the validity of the ordinance, an error prejudicial, however, only to the plaintiff. The jury nevertheless found for the plaintiff.

Subject to the exercise of ordinary care by both, it was as much the duty of the defendant under the circumstances to anticipate the crossing of the street by plaintiff as it was her duty to anticipate the coming of the defendant's automobile, and if any negligence by plaintiff is eliminated, as it has been by the jury as an issue of fact in finding for the plaintiff, the defendant should have so run his car with respect to place, speed, warnings given and outlook maintained, that the plaintiff in crossing should not be injured thereby. The car was not so run as found by the jury, and the evidence in regard thereto is not such as requires the court to disturb such verdict, unless as an arbitrary presumption of law plaintiff was negligent in not looking southwardly before getting into the path of the auto.

The judicial adoption of arbitrary presumptions of negligence in cases of the use by the public of steam railroad tracks in public highways has little application to the use of tracks so located and used by street railroads or interurban roads operating as street railroads. The use of the former is destructive of the use by the public of highways, while the use of the latter is in furtherance of such use, and consequently in the latter cases the negligence or ordinary care of the prudent person under the circumstances is peculiarly a question for the jury, and the less the courts attempt to create arbitrary presumption of negligence the less will the province of the jury be invaded.

Subject to the exercise of ordinary care by both, the plaintiff and the defendant had equal rights to use the street where, when and in the manner in which they were using it, and were equally entitled to the same rapid transit or quickness of arrival at their respective destinations, and were equally required to anticipate and provide for the exercise by the other of such right to so use such street. The fact that one was in a powerful limousine and the other was a pedestrian neither increased the right of one nor lessened the right of the other to such use, and neither increased the duty of one or lessened the duty of the other to

exercise ordinary care. The question as to whether such ordinary care was used is essentially a question for the jury.

The petition in this case sets up facts constituting negligence of the defendant. The answer denies generally, and further alleges that the plaintiff herself was negligent and that such negligence was the cause of the accident.

Evidence tending to establish that the accident was due to the negligence of the plaintiff or some other person than the defendant would have been competent under a general denial. The allegation that the accident was caused by plaintiff's negligence was therefore mere surplusage, unless such allegation was an allegation of contributory negligence as a defense. How could this be so, considered in connection with the unqualified denial of defendant's negligence?

The circumstances under which the court is required or permitted to charge upon contributory negligence as a defense have been considered by this court in the case of *Osseforth* v. *Cincinnati Traction Company*, 9 N.P.(N.S.), 360. Unless the court was required to charge upon the subject of contributory negligence as a defense, although it would have been permissible so to do, the failure to so charge would not be error. The negligence or contributory negligence of plaintiff, as a defect in plaintiff's case and as an affirmative defense by the defendant are two different matters. The evidence offered by plaintiff may be sufficient to establish the former as an irrebuttable presumption of fact so that the court will be required to direct a verdict for the defendant, or may tend to raise a rebuttable presumption of the former, or such issue as to the latter as to permit or, upon defendant's request, require the court to charge thereon, without regard to whether plaintiff's negligence is alleged in the answer. Such may be the rule, without determining the motion now made in this case.

Conceding for the purposes of this case that the answer does raise an issue as to plaintiff's contributory negligence as a defense, or that a charge upon such subject against the objection of either party would have been proper as an issue raised by the evidence, nevertheless, at the close of all the testimony and

after the special charges asked for by defendant had been passed upon, the court called the attention of counsel to the uncertainties claimed to have been injected by recent decisions into the law, in regard to charges upon contributory negligence, and repeatedly asked defendant's counsel if he desired the court to charge on the subject of contributory negligence. Thereupon defendant's counsel finally and advisedly said: "the only requests we have to make of the court we have made in our special charges and decline to make any others." The court then said: "Under the circumstances the court will give no charge on the subject of contributory negligence." To this the counsel for defendant made no objection. The court therefore, in its general charge, although charging as to what would constitute negligence on the part of the plaintiff, did not charge as to such negligence as contributory negligence and the result thereof.

The fact that the defendant by pleading and evidence raised an issue as to plaintiff's negligence as the cause of the accident, required the court to charge as to the burden of proof of such negligence before the jury could so find, and as to the condition incident to such burden, if the presumption of plaintiff's negligence as the direct cause of the accident were raised by plaintiff's evidence. That did not constitute an incomplete charge upon contributory negligence as a defense. Although both pleading and evidence raised an issue as to plaintiff's contributory negligence, defendant's counsel in expressly refusing to request the court to charge thereon after the court asked defendant's counsel in regard thereto, was certainly a waiver of any error of the court in omitting to charge upon such subject in its general charge.

Whether the court was required in this case to charge upon the subject of contributory negligence as a defense or not, the special charges asked by the defendant and refused by the court, were properly refused for various reasons, the most obvious ones being here referred to.

Special charges 1 and 2, although correct as far as they went, were misleading without the qualification of the duty of each to use ordinary care.

Charges 3 and 4 were misleading in that the court could not as a conclusion of law say that it was the unqualified duty of the plaintiff to look both north and south, and that she should have anticipated equally and unqualifiedly approaching vehicles from both directions.

Charges 5 and 6 were misleading in that the court could not charge as an unqualified presumption of law that plaintiff should have looked to the south.

The interrogatories or special findings were asked collectively but not severally as follows:

"Defendant's counsel request the court to have the jury in connection with their general verdict, answer the following in-- terrogatories."

Section 11463, General Code, provides for interrogatories to be answered by the jury only "if they render a general verdict." Moreover, such right does not extend to all issues of fact which may be raised in the trial of a case. Such right seems to be limited by Section 11464 to such facts as would "control the verdict," in other words, would or would not be consistent with such verdict as the jury might render. Other interrogatories may probably be within the discretion of the court.

The interrogatories put by the defendant did not call for answers which would have controlled any general verdict.

The motion to set aside the verdict is therefore overruled.